GREENBERG TRAURIG, LLP
David D. Cleary (AZ SBN 011826)
clearyd@gtlaw.com
Mark Tratos (NV Bar No. 1086)
tratosm@gtlaw.com
Pamela M. Overton (AZ SBN 009062)
overtonp@gtlaw.com
2375 East Camelback Road, Suite 700
Phoenix, Arizona 85016
Telephone: 602-445-8000
Facsimile: 602-445-8100

*Attorneys for Grand Canyon
Skywalk Development, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | No. 2:13-bk-02972-BMW |
| 'SA' NYU WA, INC., | Chapter 11 |
| Debtor. | **RESPONSE TO MOTION TO QUASH AND OBJECTION TO RULE 2004 ORDER OF HWAL'BAY BA:J ENTERPRISES, INC., DBA GRAND CANYON RESORT CORPORATION; MEMORANDUM OF POINTS OF AUTHORITIES** |
| | <u>Time:</u> TBA<br><u>Date:</u> TBA |
| | <u>Place:</u> Courtroom 602<br>230 N. First Ave<br>Phoenix, AZ 85003 |

Grand Canyon Skywalk Development, LLC ("GCSD") hereby submits this response (the "Response") to the *Motion to Quash and Objection to Rule 2004 Order to the Extent Directed to Hwal'bay Ba:j Enterprises, Inc., DBA Grand Canyon Resort Corporation* ("HBBE") [Docket No. 70] (the "Motion to Quash"). In support of the Response and in further support of the *Order Granting Motion of Grand Canyon Skywalk Development, LLC for Order Requiring the Production of Documents and Authorizing the Examination of The Debtor and Grand Canyon Resort Corporation Pursuant to Fed. R. Bankr. P. 2004* [Docket No. 69] (the "Rule 2004 Order"), GCSD respectfully submits the following memorandum of points and authorities:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. PRELIMINARY STATEMENT[1]

GCSD filed the Rule 2004 Motion on April 5, 2013. On April 10, SNW filed an objection to the Rule 2004 Motion on its own behalf. Subsequently, the Court scheduled a hearing on the Rule 2004 Motion for April 25, 2013. Though it was served with the notice of hearing and the Rule 2004 Motion, HBBE elected not to file an objection to the Rule 2004 Motion or to attend the April 25th hearing. At that hearing, the Court overruled SNW's objections to the Rule 2004 Motion, granted the motion in its entirety as to both SNW and GCSD and entered the Rule 2004 Order on April 29, 2013 [Docket No. 69].

Though it had not appeared in this bankruptcy case until it filed the Motion to Quash on May 17, 2013, HBBE has been privy to everything that has transpired in this case. Aside from the fact that the Tribe wholly owns both entities, HBBE's Chief Executive Officer, Jennifer Turner, is also the Chief Executive Officer of SNW and has been since October 2012. Regardless of the fact that it was aware of the Rule 2004 Motion and the entry of the Rule 2004 Order, HBBE waited more than two weeks to file its Motion to Quash or even to contact attorneys for GCSD.

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings given to them in the *Motion of Grand Canyon Skywalk Development, LLC for Order Requiring the Production of Documents and Authorizing the Examination of the Debtor and Grand Canyon Resort Corporation Pursuant to Fed. R. Bankr. P. 2004* [Docket No. 47] (the "Rule 2004 Motion").

1

As a threshold matter, the Motion to Quash is an improper collateral attack on the Rule 2004 Order. HBBE does not contest service of the Rule 2004 Motion or notice of the hearing on the Rule 2004 Motion. The Court entered the Rule 2004 Order on April 29, 2013 and the deadline to appeal the order was May 13, 2013. Because HBBE did not appeal the Rule 2004 Order, that order is now final. As such, the proper recourse to challenge the order is found in Federal Rules of Civil Procedure 59 and 60. HBBE has not filed such a motion under those rules and has no basis to do so.

Beyond the fact that the Motion to Quash has a fatal procedural defect, HBBE has failed to assert any viable legal or factual grounds to quash the Rule 2004 Order. Tellingly, HBBE does not challenge that the information requested in the Rule 2004 Order directly pertains to SNW's property, liabilities or financial condition within the parameters of Rule 2004. Instead, under the putative cloak of sovereign immunity, the Tribe and HBBE seek to prevent the disclosure of information that is vital to the administration of this chapter 11 case. HBBE's resort to sovereign immunity is unavailing. Congress expressly and unequivocally abrogated sovereign immunity in the context of a Rule 2004 proceeding in Section 106(a)(3) of the Bankruptcy Code which provides in relevant part:

> Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following: (3) **The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure**, including an order or judgment awarding a money recovery, but not including an award of punitive damages …

11 U.S.C. §106(a)(3). The plain meaning of Section 106(a)(3) is that sovereign immunity is abrogated as to a bankruptcy court's issuance of an order under the Federal Rules of Bankruptcy Procedure, including Rule 2004. The Ninth Circuit Court of Appeals and lower courts within the Circuit have held that tribes and tribal entities are "governmental units" subject to Section 106(a). And while HBBE contends that Section 106(a) is unconstitutional, the U.S. Supreme Court held seven years ago in *Central Virginia Community College v. Katz* that the section was validly

enacted under the Bankruptcy Clause of Article I of the Constitution.[2] HBBE fails to cite *Katz* and relies solely on cases that predate *Katz*.

There is yet another reason the Motion to Quash must be denied: the Tribe waived its sovereign immunity and that of HBBE by voluntarily causing and/or authorizing SNW to file bankruptcy and invoke this Court's jurisdiction. By its own admission, HBBE is an "arm" of the Tribe that exists for the latter's economic benefit. The same is true of SNW. Courts have extended sovereign immunity to tribal entities precisely because they "act as an arm of the tribe so that [their] activities ***are properly deemed to be those of the tribe***."[3] The converse of this principle applies here; the Tribe and SNW's waiver of sovereign immunity in voluntarily invoking bankruptcy court jurisdiction extends to HBBE, which exists only for the Tribe's economic benefit.

Further, sustaining HBBE's claim of sovereign immunity violates public policy against fraud and is contrary to the objectives of the Bankruptcy Code. In an effort to thwart GCSD's collection efforts and continue siphoning the substantial profits from the Skywalk for its sole benefit, the Tribe terminated SNW's most valuable contract rights (to manage and operate the Skywalk) on the eve of SNW's bankruptcy and transferred those same rights to the Tribe's other "arm," HBBE. HBBE now operates the same business SNW operated, hired the same employees, has identical management and the Tribe continues to receive the profits from the Skywalk's operations. HBBE is also a party to a consignment agreement with SNW for which the parties now seek approval to extend under Section 363 of the Bankruptcy Code. *See Emergency Motion for Order Authorizing 60-Day Extension of Agreement Between the Debtor and HBBE* [Docket No. 84]. Plainly, HBBE is amenable to the exercise of this Court's jurisdiction when it is beneficial to HBBE. The Tribe and HBBE's game of sleight of hand should not be rewarded with sovereign immunity.

---

[2] *Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356 (2006).

[3] *Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006).

LV 419998818v6
Case 2:13-bk-02972-BMW   Doc 88   Filed 05/31/13   Entered 05/31/13 17:08:57   Desc
Main Document   Page 4 of 15

## II. ARGUMENT

### A. The Motion to Quash Is an Improper Collateral Attack on the Rule 2004 Order which Is a Final Order

HBBE does not contest that it was served with the Rule 2004 Motion. The Court entered the Rule 2004 Order on April 29, 2013 and the last date to file a notice of appeal of that order was May 13, 2013. HBBE did not file a notice of appeal and the Rule 2004 Order became a final order on May 14, 2013. A motion to quash cannot be used to alter or amend a prior order of the Court. Federal Rules 59 and 60 provide the only procedural means by which a court can alter or amend its prior order. Rule 59(e)[4] empowers a court to alter or amend its orders or judgments. Rule 59(e) allows alteration or amendment of an order or judgment if one of four grounds is present: 1) the motion is necessary to correct "manifest errors of law or fact upon which the judgment is based;" 2) the moving party presents "newly discovered or previously unavailable evidence;" 3) the motion is necessary to "prevent manifest injustice;" or 4) there is an "intervening change in controlling law."[5] HBBE did not file a motion under Rule 59(e) nor does any basis for such a motion exist. As discussed herein, the Court did not commit any manifest error of law. The Motion to Quash is unsupported by any evidence, much less evidence that was "newly discovered" or "previously unavailable". To be certain, there is no "manifest injustice" to HBBE. And there is no intervening change in the law. The bases for relief from judgment under Rule 60(b) are similar to Rule 59(e) and equally inapplicable here.

Thus, the Motion to Quash should be denied because it is an improper collateral attack on a final order of the Court.

### B. HBBE's Sovereign Immunity Has Been Expressly Abrogated by Congress and Waived by the Actions of HBBE, SNW and the Tribe

Equally dispositive of the Motion to Quash is that Section 106(a) of the Bankruptcy Code, as confirmed by the Supreme Court in *Katz*, validly abrogates sovereign immunity in this context. Moreover, any right of HBBE to sovereign immunity in this case has been waived for the reasons discussed below.

---

[4] Made applicable in bankruptcy cases by FED. R. BANKR. P. 9023 and 9024.
[5] *Turner v. Burlington N. Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003).

4

### 1. Sovereign Immunity under the Eleventh Amendment

The Eleventh Amendment to the Constitution articulates the principles of the sovereign immunity doctrine and states, "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign State." US CONST. amend. XI. (Emphasis added.) The U.S. Supreme Court explained in *Alden v. Maine* that sovereign immunity was not created under the Eleventh Amendment but instead derives from English law which held that "the Crown could not be sued without consent in its own courts."[6] The Supreme Court has also stated that a state's sovereign immunity under the Eleventh Amendment can be abrogated by Congress (if Congress intends "unequivocally" to do so) or waived.[7] Like the States, tribes have immunity from suit unless Congress has clearly abrogated that immunity or the tribes waive their immunity[8] and tribal entities or agencies may not be sued if the entity being sued is an "arm of the tribe."

### 2. 11 U.S.C. §106(a)(3) Provides an Express Statutory Abrogation of Sovereign Immunity that Allows Bankruptcy Courts to Issue Process or an Order under the Federal Rules of Bankruptcy Procedure

HBBE argues that Section 106(a) has no application in the context of an order issued under Rule 2004. This argument ignores the plain language of Section 106(a) which provides otherwise:

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
>
> (1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

---

[6] *Alden v. Maine*, 527 U.S. 706, 715 (1999).

[7] *Seminole Tribe v. Florida*, 517 U.S. 44 (1996).

[8] *Kiowa Tribe of Oklahoma v. Mfg. Technologies, Inc.*, 523 U.S. 751, 757 (1998).

5

>     (2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.
>
>     (3) **The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure**, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.
>
>     (4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.
>
>     (5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

11 U.S.C. §106(a). (Emphasis added.)

Supreme Court jurisprudence teaches that questions of statutory interpretation begin with the plain language of the statute.[9] Where the statute is clear, there is no further inquiry, and courts are to enforce the statute on its plain meaning.[10] However, where the plain meaning of the statutory language is not clear, the statute's context within the overall statutory framework should be examined.[11]

A plain construction of the first clause in subsection (a)(3) is that sovereign immunity is abrogated to allow bankruptcy courts to issue an order or process under the Bankruptcy Code sections enumerated in subsection (a)(1) or under the Federal Rules of Bankruptcy Procedures

---

[9] *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004).

[10] *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989).

[11] *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("[S]tatutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").

(including Rule 2004). To be certain, Congress could have drafted this clause differently to achieve a different result. For example, it could have added the phrase "with respect to the application of such sections" used in subsection (a)(2) to restrict the bankruptcy court's power under subsection (a)(3) to the Code sections listed in subsection (a)(1). But Congress did not do so. "Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."[12] Because there is no ambiguity in the language of Section 106(a), the Court should enforce its plain meaning; sovereign immunity is abrogated as to an order entered pursuant to Rule 2004.

### 3. The Ninth Circuit and Courts Within this District Have Held that Indian Tribes Are "Governmental Units" Within the Ambit of Section 106(a) and the Supreme Court Has Held that Section to Be Constitutional

Not to be deterred in its assault on Section 106(a), HBBE makes two further arguments. First, it argues that Congress did not intend to include Indian tribes within the ambit of the term "governmental unit" and therefore did not abrogate their sovereign immunity under Section 106(a), directly contradicting Ninth Circuit's decision in *Krystal Energy Company v. Navajo Nation* and bankruptcy court decisions from this district which ruled to the contrary. HBBE then argues that this Court should refuse to apply Section 106(a) contending that the section is unconstitutional.

In *Krystal*, the debtor filed an adversary proceeding against the Navajo Nation seeking (1) a turnover of certain assets under 11 U.S.C. § 542; (2) determination of tax due to the Nation under 11 U.S.C. § 505; and (3) damages arising out of the seizure of the debtor's assets by the Navajo Nation. The Navajo Nation moved to dismiss the complaint, among other grounds, on the ground that the claims asserted in the complaint were barred by the Navajo Nation's sovereign immunity. The bankruptcy court granted the Navajo Nation's motion to dismiss and the debtor appealed to the district court. Affirming the decision of the bankruptcy court, the district court

---

[12] *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993).

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

held that Section 106(a) did not abrogate the Navajo Nation's sovereign immunity because the definition of "governmental unit" in Section 101(27) does not specifically mention Indian tribes.

After the debtor appealed to the Ninth Circuit, the Court of Appeals reversed the district court. Relying in part on the extensive reasoning of two decisions[13] from the District of Arizona that HBBE ignores entirely in the Motion to Quash, the Court of Appeals concluded that: (i) "Congress did intend to abrogate the sovereign immunity of all 'foreign and domestic governments'" and (ii) that Indian tribes are "a specific member of the group of domestic governments, the immunity of which Congress intended to abrogate."[14]

HBBE's argument that Section 106(a) is unconstitutional is even more specious. This is because the Supreme Court's decision seven years ago in *Central Virginia Community College v. Katz* put an end to that debate by holding that Congress' enactment of Section 106(a) was a valid exercise of its Article I powers under the Bankruptcy Clause.[15] Every case relied upon by HBBE predates *Katz*.

*Katz* followed on the heels of the Supreme Court's decision in *Tennessee Student Assistance Corporation v. Hood*, where the Supreme Court, in the context of a proceeding commenced by a debtor to determine the dischargeability of a student loan, held that the discharge was an *in rem* proceeding that did not implicate sovereign immunity.[16] The Court, however, left open the question of whether Section 106(a) was constitutionally valid. In *Katz*, the trustee (Katz) brought preference actions against Central Virginia Community College and other

---

[13] *See In re Russell*, 293 B.R. 34, 44 (Bankr. D. Ariz. 2003) (J. Haines) (holding that Section 106(a) abrogates tribal sovereign immunity "unequivocally[ ] and without implication"); *In re Davis Chevrolet, Inc.*, 282 B.R. 674, 683 n. 5 (Bankr. D. Ariz. 2002) (J. Nielsen) ("[i]t seems to this court that 'other domestic government' is broad enough to encompass Indian tribes."). In both cases, the bankruptcy courts applied Section 106(a) and held that the respective tribe's sovereign immunity was abrogated.

[14] *Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055, 1058 (9th Cir. 2004); *see also In re Platinum Oil Properties, LLC*, 465 B.R. 621, 643 (Bankr. D.N.M. 2011) ("The language 'or other foreign or domestic government' found in 11 U.S.C. § 101(27) includes Indian tribes, such that 11 U.S.C. § 106 together with 11 U.S.C. § 101(27) embodies Congress' clear and unequivocal abrogation of tribal sovereign immunity.")

[15] 546 U.S. 356 (2006).

[16] *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 443-51 (2004).

LV 419998818v6
Case 2:13-bk-02972-BMW    Doc 88    Filed 05/31/13    Entered 05/31/13 17:08:57    Desc
Main Document    Page 9 of 15

public institutions of higher education in Virginia.[17] Adhering to circuit precedent, the lower courts rejected the colleges' sovereign immunity defense.[18] The Supreme Court granted *certiorari* in the case in order to determine whether section 106(a) was a valid abrogation of state sovereign immunity.[19]

Returning to the concept of bankruptcy as an *in rem* proceeding discussed in *Hood*, the Supreme Court explained that "[b]ankruptcy jurisdiction, as understood today and at the time of the framing, is principally *in rem* jurisdiction," the exercise of which "does not, in the usual case, interfere with state sovereignty even when the States' interests are affected."[20] The Court, however, went beyond the *in rem* terminology of *Hood*, explaining that "insofar as orders ancillary to the bankruptcy courts' *in rem* jurisdiction, like orders directing turnover of preferential transfers, implicate the States' sovereign immunity from suit, the States agreed in the plan of the Convention not to assert that immunity."[21] The Court stated that "[t]his history strongly supports the view that the Bankruptcy Clause of Article I . . . simply did not contravene the norms this Court has understood the Eleventh Amendment to exemplify."[22] The Court concluded as follows:

> The ineluctable conclusion, then, is that States agreed in the plan of Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to "Laws on the subject of Bankruptcies ... But while the principal focus of bankruptcy proceedings is and was always the res, some exercises of bankruptcy courts' powers-issuance of writs of habeas corpus included-unquestionably involved more than mere adjudication of rights in a res. In ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effect the in rem jurisdiction over the bankruptcy courts.[23]

---

[17] 546 U.S. at 360.
[18] *Id.* at 361-62.
[19] *Id.*
[20] *Id.* at 369-70.
[21] Id. at 373.
[22] Id. at 375.
[23] *Id.* at 377-78.

LV 419998818v6
Case 2:13-bk-02972-BMW    Doc 88    Filed 05/31/13    Entered 05/31/13 17:08:57    Desc
Main Document    Page 10 of 15

In response to the question before it to whether Section 106(a) was a lawful act of Congress under the Bankruptcy Clause of Article I, the Court stated firmly: "[w]e think it beyond peradventure that it is."[24]

Since *Katz*, Collier on Bankruptcy and several courts have commented that challenges to the constitutionality Section 106(a) have little remaining merit.[25] Here, the Rule 2004 Order is precisely the type of ancillary proceeding that is necessary to effectuate this Court's *in rem* jurisdiction over the estate's property and rights.

### 4. The Tribe Expressly and Voluntarily Waived HBBE's Sovereign Immunity by Causing SNW to File a Chapter 11 Case

It is well-established that states (and Indian tribes) may waive their sovereign immunity.[26] To waive its sovereign immunity, a state must "unequivocally" express intent to waive its constitutional immunity protection.[27] Courts of Appeal, including the Ninth Circuit, have held that where a state brings an adversary or similar proceeding in a federal forum (bankruptcy or otherwise), the commencement of such action effects a waiver of its sovereign and Eleventh Amendment immunity at least as to the subject matter of the proceeding and any defenses, counterclaims, and causes of action against the state.[28] Such holdings are consistent with the

---

[24] *Id.* at 379.

[25] *See* 2 COLLIER ON BANKRUPTCY, 16th Ed. ¶106.02 ("*Katz* thus seems to be put an end to the debate about the constitutionality of section 106(a)."); *Florida Dep't of Revenue v. Omine (In re Omine)*, 485 F.3d 1305, 1314 (11th Cir. 2007) ("As a result of the Supreme Court's opinion in *Katz*, it is necessary to point out that our pre-*Katz* reasoning of *In re Crow*, 394 F.3d at 922, invalidating section 106(a), in part, on the basis that Congress may not abrogate state sovereign immunity by legislation passed pursuant to its Article I powers, is no longer good law."), *withdrawn as moot due to settlement*, 2007 WL 6813797 (11th Cir. June 26, 2007); *In re Slayton*, 409 B.R. 897, 904 (Bankr. N.D. Ill. 2009) ("Whatever merit [the state's] Eleventh Amendment argument had immediately after *Seminole Tribe*, it has little going for it after *Hood* and *Katz*).

[26] *See Alden v. Maine*, 527 U.S. at 737.

[27] *See, Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).

[28] *See, e.g., In re Platter*, 140 F.3d 676, 679-80 (7th Cir. 1998) (holding that a state waived sovereign immunity by commencing an adversary proceeding for declaratory relief that its claim was non-dischargeable); *Confederated Tribes v. White (In re White)*, 139 F.3d 1268, 1271 (9th Cir. 1998) ("[i]nitiation of a lawsuit is an action that 'necessarily establishes consent to the court's adjudication of the merits of that particular controversy,' including the risk of being bound by an adverse determination." (quoting *McClendon v. United States*, 885 F.2d 627, 630 (9th Cir. 1989)).

LV 419998818v6
Case 2:13-bk-02972-BMW    Doc 88    Filed 05/31/13    Entered 05/31/13 17:08:57    Desc
Main Document    Page 11 of 15

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

general rule that a state may waive its immunity by "voluntarily invoking (federal court) jurisdiction."[29] Other courts, including the Ninth Circuit in *In re White*, have taken a further step in holding that a state's active participation in a bankruptcy case, even without the commencement of an adversary proceeding against the debtor is sufficient to waive the state's immunity.[30]

The facts of this case are even more compelling than *In re Platter* and *In re White*. The Tribe's two "arms," SNW and HBBE, each are wholly owned by the Tribe and exist solely to provide the Tribe with an economic benefit. Additionally, both entities have the same CEO, the same Tribal members on their respective boards of directors and HBBE has hired SNW's former employees. In the face of GCSD's attempts to collect its judgment from SNW, the Tribe made a tactical decision—in order to continue reaping the millions of dollars generated by the Skywalk, the Tribe terminated SNW's rights under the 2007 Agreement and simultaneously transferred the same rights to its other "arm," HBBE, which continues to collect this money to date. The Tribe then made the calculated and voluntary decision to cause and/or authorize SNW to file a chapter 11 bankruptcy case and to invoke the jurisdiction of this Court and the protections of the Bankruptcy Code including the automatic stay. *See Declaration of Jennifer Turner in Support of Chapter 11 Filing and First Day Motions*, ¶ 26 ("SNW has filed this Chapter 11 case to prevent further collection efforts by GCSD for its sole benefit …").

Notwithstanding these facts, HBBE claims that its own sovereign immunity has continuing vitality and insulates it from the bankruptcy court jurisdiction that the Tribe and SNW invoked. HBBE's reasoning is simplistic; it has not signed an agreement waiving its immunity or appeared in this case. HBBE's position is both legally and equitably unsustainable. The Ninth

---

[29] *College. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 681 (1999).

[30] *See, e.g., Wyoming Dep't of Transp. v. Straight (In re Straight)*, 143 F.3d 1387, 1389-90 (10th Cir. 1998), cert. denied, 119 S.Ct. 446 (1998); *In re White*, supra, 139 F.3d at 1270-71 (holding that Native American Tribe waived its immunity by twice voting on the debtor's plan of reorganization, objecting to confirmation of the plan, submitting an order denying confirmation and otherwise participating in the bankruptcy case).

Circuit explained in *Allen v. Gold Country Casino*[31] and *Cook v. AVI Casino Enterprises, Inc.*[32] that the legal basis for extending immunity to tribal commercial entities is that the entity "acts as an arm of the tribe so that its activities ***are properly deemed to be those of the tribe***." Under the straightforward logic of *Allen* and *Cook*, SNW's express waiver of its sovereign immunity by filing a chapter 11 petition must extend to the Tribe and, transitively, to HBBE. Put another way, the reason that tribal entities such as HBBE have sovereign immunity is the same reason it has been waived in this case.

Moreover, preserving HBBE's sovereign immunity is contrary to public policy against fraud[33] and contrary to the objectives of the Bankruptcy Code. The Tribe has selectively availed itself of federal bankruptcy law to stem collection efforts. Yet, to preserve the cash annuity it receives from the Skywalk, the Tribe transferred SNW's most valuable rights to HBBE on the eve of SNW's bankruptcy. These facts bear the hallmarks of a classic fraudulent transfer. Were the Court to sustain HBBE's claim of sovereign immunity, it would seal the attendant facts and circumstances of the Tribe and HBBE's prepetition transactions from SNW's creditors and implicitly countenance those transactions. In this regard, the Tribe and HBBE will have exploited the bankruptcy system in unparalleled fashion.

It is also notable that just prior to the bankruptcy filing, when the right to operate the Skywalk was transferred HBBE, HBBE purports to have assumed all of SNW's beneficial rights with respect to the Skywalk but none of SNW's obligations and waivers. In particular, the 2003 Agreement provided for a waiver of SNW's sovereign immunity with respect to all disputes arising under that agreement. *See* 2003 Agreement at ¶ 15.4(d). In affirming the Arbitration Award, the District Court upheld the validity of SNW's waiver of sovereign immunity. *See Order* entered by the District Court on February 22, 11, 2013, attached to the *Declaration of Mark G. Tratos in Support of: (1) Motion of Grand Canyon Skywalk Development, LLC for*

---

[31] 464 F.3d 1044, 1046 (9th Cir. 2006).
[32] *Cook v. AVI Casino Enterprises, Inc.*, 548 F.3d 718, 725 (9th Cir. 2008).
[33] *See, e.g., In re Asia Global Crossing, Ltd.*, 404 B.R. 335 (S.D.N.Y. 2009) (noting the public policy against fraud).

12

*Order Requiring the Production of Documents and Authorizing the Examination of the Debtor and Grand Canyon Resort Corporation Pursuant to Fed. R. Bank. P. 2004 [Docket No. 47]; and (2) Motion for Relief From Stay to Pursue Action in Nonbankruptcy Forum [Docket No. 46]* [Docket No. 49] as <u>Exhibit 7</u>.

### III. CONCLUSION

WHEREFORE, GCSD respectfully requests that this Court deny the Motion to Quash, and grant all such other relief as the Court deems necessary and proper.

RESPECTFULLY SUBMITTED this 31st of May, 2013.

GREENBERG TAURIG, LLP

By */s/ David D. Cleary*
David D. Cleary
*Attorneys for Grand Canyon Skywalk Development, LLC*

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

| | |
|---|---|
| 1 | E-FILED this 31st day of May, 2013 with the Clerk of the Court. |
| 2 | |
| 3 | COPIES of the foregoing were served electronically this 31st day of May, 2013 via the Court's ECF system on all parties that have appeared in this case. |
| 4 | |
| 5 | |
| 6 | COPIES of the foregoing sent via U.S. Mail this 31st day of May, 2013 to: |
| 7 | |
| 8 | 'SA' NYU WA, INC.<br>P.O. Box 359<br>Attn: Jennifer Turner<br>16500 E. Hwy 66<br>Peach Springs, AZ 86434 |
| 9 | |
| 10 | |
| 11 | *Counsel for Debtor*<br>John A. Harris<br>Kelly Singer<br>QUARLES & BRADY LLP<br>One Renaissance Square<br>Two N. Central Avenue<br>Phoenix, AZ 85004 |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | *Counsel for Hwal'bay Ba:j Enterprises, Inc.*<br>Alan A. Meda<br>Christopher Graver<br>Sharon W. Ng<br>STINSON MORRISON HECKER LLP<br>1850 N. Central Avenue, Suite 2100<br>Phoenix, AZ 85004-4584 |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | U.S. TRUSTEE<br>Office of the U.S. Trustee<br>230 North First Avenue, Suite 204<br>Phoenix, AZ 85003 |
| 22 | |
| 23 | */s/ Kathy Lai* |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

14